IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


ALLEGHENY WOOD PRODUCTS, INC.,

      Plaintiff,

    v.                                CIVIL NO. 2:22-CV-07
                                             (KLEEH)
UNITED STATES FISH AND WILDLIFE SERVICE,
MARTHA WILLIAMS, in her official capacity as
the Director of U.S. Fish and Wildlife Service,
UNITED STATES DEPARTMENT OF THE INTERIOR,
and DEB HAALAND, in her official capacity as
the Secretary of the U.S. Department of the Interior,

      Defendants.

MEMORANDUM OPINION AND ORDER [ECF NOS. 41,45]

Pending before the Court is Plaintiff Allegheny Wood Products, Inc.'s ("AWP" or "Plaintiff") motion for summary judgment [ECF No. 41] and Defendant United States Fish and Wildlife Service's ("Service" or "Defendant") motion for summary judgment [ECF No. 45]. For the reasons discussed herein, Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.

## I.   FACTUAL BACKGROUND

Approximately 16 years ago, Plaintiff began the process of obtaining an Incidental Taking Permit ("ITP") from the Service for a timber harvest and housing development project. Plaintiff sought the ITP because its use of a tract of property in Tucker County, West Virginia could incidentally affect the habitats of seven

MEMORANDUM OPINION AND ORDER [ECF NOS. 41,45]

threatened or endangered species including the Cheat Mountain Salamander, northern long-eared bat, and the Indiana bat. ECF No. 42, Pl. Mem. Supp. Summ. J., at 1; ECF No. 45-1, Def. Mem. Supp. Summ. J., at 1.

**1. The Endangered Species Act and Incidental Taking Permits**

The Endangered Species Act ("ESA") prohibits the unauthorized "take" of an endangered species. 16 U.S.C. § 1538 (a)(1)(B). "The term 'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct" towards the species protected under the ESA. 16 U.S.C. § 1532(19). However, the ESA provides an exception for certain takings which are "incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. §1539(a)(1)(B).

To receive this exception, one must apply for and be granted an incidental taking permit ("ITP"). An ITP application must include a complete a habitat conservation plan ("HCP"). The HCP must specify:

> (i) the impact which will likely result from such taking;
>
> (ii) what steps the applicant will take to minimize and mitigate such impacts, and the funding that will be available to implement such steps;
>
> (iii) what alternative actions to such taking the applicant considered and the reasons why such alternatives are

**MEMORANDUM OPINION AND ORDER [ECF NOS. 41,45]**

not being utilized; and

    (iv)    such other measures that the Secretary may require as being necessary or appropriate for purposes of the plan.

16 U.S.C. § 1539(2)(A). The Service provides further guidance on the ITP application process through regulation. A complete ITP application must include:

    (i)    A complete description of the activity sought to be authorized;

    (ii)    The common and scientific names of the species sought to be covered by the permit, as well as the number, age, and sex of such species, if known;

    (iii)    A conservation plan that specifies:

        (A)    The impact that will likely result from such taking;

        (B)    What steps the applicant will take to monitor, minimize, and mitigate such impacts, the funding that will be available to implement such steps, and the procedures to be used to deal with unforeseen circumstances;

        (C)    What alternative actions to such taking the applicant considered and the reasons why such alternatives are not proposed to be utilized; and

        (D)    Such other measures that the Director may require as being necessary or appropriate for purposes of the plan.

50 C.F.R. § 17.22. "Upon receipt of a complete application, the Director may issue a permit . . . for the incidental taking of

endangered wildlife." Id.

### 2. Incidental Taking Permit Application Process

There are four phases to obtaining an ITP: (1) pre-application; (2) developing a habitat conservation plan ("HCP") and environmental compliance documents; (3) processing, making a permitting decision, and issuing the ITP; and (4) implementing the HCP and compliance monitoring. ECF No. 41-1, HCP Handbook at 1-13; ECF 45-1, at 3-4. Preparing the ITP application and proposed HCP is meant to be a collaborative process between the applicant and the Service. See generally ECF No. 41-1; ECF No. 42, at 3. The goal of the second phase "is for the applicant, with [Service's] guidance and assistance, to prepare a draft HCP that is statutorily complete and meets the incidental take permit issuance criteria." ECF No. 41-1, at 2-2; see ECF No. 45-1, at 14-15.

The Habitat Conservation Planning and Incidental Take Permit Processing Handbook ("HCP Handbook") serves as an instructional aid for Services staff, as well as provides applicants with further assistance through the ITP application process. ECF No. 41-1. The HCP Handbook provides that Service field office staff must review a submitted ITP application to determine it is "statutorily complete and otherwise meets regulatory and policy requirements applicable to a permit application," before sending the application package to the Service's Regional Office. ECF No. 41-1, at 14-11. The third phase, which includes publishing the HCP in

4

the Federal Register for public comment, cannot occur until the Service determines it has received a statutorily complete application. See 50 C.F.R. §§ 17.22, 17.32(b)(1)(ii); ECF No. 41-1, at 1-13.

### 3. Allegheny Wood Product's ITP Application

To date, Plaintiff has not received an ITP since beginning the process in 2006. ECF No. 42, at 1. However, the parties disagree as to why this is the case. Plaintiff argues that the Service rejected its application as statutorily incomplete after the application remained in a "perpetual administrative limbo" for sixteen years. Id. Plaintiff contends that the Service's decision was procedurally improper because it engaged in a substantive review of the application at the formalistic intake stage. Id. at 2. Plaintiff claims that it submitted multiple drafts of the HCP to the Service over the years, but that the agency was overall unresponsive or delayed in providing feedback and comments. Id. at 3-8.

Plaintiff and Defendant went through eleven drafts of comments and revisions on the HCP. Id. at 7; ECF No. 45-1, at 9. On December 7, 2021, Plaintiff submitted what it believes was a complete application for the ITP. ECF No. 42, at 7. Plaintiff alleges the Service rejected the application in October 2022, after the subject suit was filed. Id. at 8.

In contrast, the Service contends that Plaintiff has resisted

the HCP process from the outset. ECF No. 45-1, at 2. Defendant argues that Plaintiff was non-cooperative and that the Service tried to work with Plaintiff to develop a legally defensible HCP. Id. Following the tenth version of the HCP, the Service drafted a 22-page single-spaced document outlining the issues with the HCP and a 45-page document to model how to approach accounting for the likely take of species and mitigating the effects of the proposed activities. Id. at 9. The Service states that Plaintiff continually refused to address the deficiencies in the HCP for years and thus, the Service ultimately determined the ITP application was incomplete. Id. at 9-10. The Service argues it needed certain information, elaborated upon below, from Plaintiff during the HCP process to move forward with the application process. Id.

The Service claims that Plaintiff was ultimately unwilling to implement the recommended revisions to create a complete HCP. Id. at 9. When Plaintiff submitted its "final draft" HCP for consideration in 2021, the Service found it incomplete and that it did not meet the ESA's statutory requirements. Id. at 10.

### 4. The Service's Final Decision Regarding Completeness

On October 17, 2022, the Service sent a letter to AWP rendering a decision on AWP's December 2021 final draft HCP. AR-000059-65. See also, ECF No. 45-1, at 10; ECF No. 42, at 8. The letter was in response to Plaintiff's request for a "Service determination as to whether AWP's Draft HCP for the Blackwater

6

property in Tucker County, West Virginia, meets all necessary requirements and is complete." AR-000059. See also AR-000860-61. AWP specifically requested in its correspondence to the Service that it intended the Draft HCP to be "the Final Draft for consideration by USFWS and the public towards a permit issuance decision" and that AWP believed the HCP was "sufficient to meet the criteria for issuance of an incidental take permit and urge[d] the USFWS to complete the process of considering its application for a permit." AR-000059; AR-000860-61.

Upon completing its review, the Service determined the application was incomplete because it did not meet all the necessary requirements. AR-000059. Thus, AWP's ITP application could not proceed to the next phase of the application process. AR-000059-60. The Service identified two foundational issues with the HCP. AR-000060; ECF No. 45-1, at 10; ECF No. 42, at 16.

The Service's letter further detailed the identified insufficiencies of AWP's Draft HCP and reviewed its attempts to collaborate with AWP. AR-000062. First, the Service found that the Draft HCP "did not provide sufficient information on the covered activities for the Service to fulfill its responsibility to adequately assess the impacts to the covered species – an issue the Service has previously identified to AWP in prior drafts." Id. The service found the Draft HCP failed to fully account for the type, amount, or impact of the resulting takings because AWP did

MEMORANDUM OPINION AND ORDER [ECF NOS. 41,45]

not provide sufficient project details at scales relevant to the impacted species. Id. For example, the Draft HCP combined and characterized multiple activities as "integral components to harvesting" instead of detailing how each of the different activities within harvesting could impact the species. Id. The letter then gave additional examples of instances within the Draft HCP in which AWP did not adequately deconstruct its anticipated activities, thus prohibiting a complete assessment of the covered activities' impacts. AR-000063.

Second, the Service found that the Draft HCP failed "to completely account for the potential take that is 'reasonably certain' to occur" because AWP did not incorporate "the best available science." AR-000063-64. For example, relying upon the best available science, the Service concluded that the Draft HCP likely underrepresented the potential take that is "reasonably certain" for the Cheat Mountain Salamander. AR-000064. The Service explained that AWP did not take into consideration several published studies – provided to AWP - which reported on the "wide range of reported effects and suggesting greater salamander population-level impacts from timber management activities." Id. Because AWP did not provide more detailed descriptions of the activities and impacts in the Draft HCP, the Service explained it had to rely on the best available science in conducting its "reasonable certainty" analysis. Id.

Thus, the Service concluded that the Draft HCP was incomplete and that AWP's ITP application could not proceed to the next phase of review. The Service additionally stated it was "taking the final action of deeming the Draft HCP incomplete and [would] cease processing the application, because AWP indicated in the Request that the Draft HCP would be the final HCP submitted." AR-000065 (emphasis added); see AR-000860-61.

This finding was "unusual" for the Service because it usually works with the applicant until the HCP is complete or the applicant stops pursuing the ITP. AR-000065; ECF No. 45-1, at 10. But, Plaintiff indicated it would not provide any more drafts. Id.; ECF No. 42, at 7.

## II. PROCEDURAL HISTORY

On June 1, 2022, AWP filed suit alleging a single claim for unreasonable delay under the Administrative Procedure Act ("APA"). ECF No. 1. Following the Service's determination that AWP's Habitat Conservation Plan did not meet the requirements of the Endangered Species Act and, as a result, that the Incidental Taking Permit application was incomplete, AWP filed an amended complaint and a second amended complaint, asking the Court to set aside the Service's decision as unlawful agency action and arbitrary and capricious. ECF Nos. 16, 25.

Plaintiff then moved for summary judgment on June 30, 2023. ECF No. 41. On August 18, 2023, Defendant filed a cross-motion for

9

MEMORANDUM OPINION AND ORDER [ECF NOS. 41,45]

summary judgment and responded in opposition to Plaintiff's motion. ECF No. 45. Plaintiff then filed its response in opposition to Defendant's motion and its reply in support of its own summary judgment motion. ECF No. 46. The Service subsequently filed its reply in support of its motion on November 9, 2023. ECF No. 49. The Court took up oral argument on both motions on January 25, 2024. The motions for summary judgment are thus both fully briefed and ripe for review.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). However, this case involves the Service's decision that AWP's ITP application was incomplete, which is a final agency action subject to judicial review under the APA, 5 U.S.C. § 702.[1] This context significantly changes a court's role and restricts its purview at the summary judgment stage. "A court conducting judicial review under the APA does not resolve factual questions, but instead determines 'whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" Ohio Valley Env't Coal. v. Hurst, 604 F. Supp. 2d 860, 879-80 (S.D.W. Va. 2009)

---

[1] The parties do not dispute that the Service's October 17, 2022, letter deeming the Draft HCP incomplete and ceasing further processing of the application qualifies as a final agency action. AR-000065.

(quoting Sierra Club v. Mainella, 459 F.Supp.2d 76, 90 (D.D.C. 2006)). Therefore, "in a case involving review of a final agency action under the [APA] ... the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record." Id.

"In this context, summary judgment becomes the 'mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" W. Va. Dep't of Health & Hum. Res. v. Sebelius, 172 F. Supp. 3d 904, 913–14 (S.D.W. Va. 2016) (quoting Ohio Valley Env't. Coal., 604 F.Supp.2d at 879 (internal citation omitted)).

Under the APA, a court must hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

> An action is arbitrary or capricious if 'the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'

Nat'l Audubon Soc'y v. United States Army Corps of Engineers, 991 F.3d 577, 583 (4th Cir. 2021) (quoting Hughes River Watershed Conservancy v. Johnson, 165 F.3d 283, 287–88 (4th Cir. 1999)).

This standard of review is "highly deferential, with the

presumption in favor of finding the agency action valid." Id.
(quoting Ohio Valley Env't. Coal. v. Aracoma Coal Co., 556 F.3d
177, 192 (4th Cir. 2009)). "When applying it, a court is limited
to the task of reviewing whether the deciding body 'examine[d] the
relevant data and articulate[d] a satisfactory explanation for its
action, including a 'rational connection between the facts found
and the choice made.'" Sebelius, 172 F. Supp. 3d at 914 (quoting
Kreis v. Sec'y of the Air Force, 406 F.3d 684, 686 (D.C.Cir.2005)).
"Moreover, the agency is owed particular deference when exercising
its judgment in resolving factual disputes that 'implicate
substantial agency expertise' and that require the agency to
'balance often-competing interests.' . . . [a]nd '[w]hen an agency
is called upon to make complex predictions within its area of
special expertise, a reviewing court must be at its *most*
deferential.'" Nat'l Audubon Soc'y, 991 F.3d at 583 (internal
citations omitted) (emphasis in original). Thus, the Court "must
uphold a decision that has 'substantial support in the record as
a whole' even if it might have decided differently as an original
matter." Sebelius, 172 F. Supp. 3d at 914.

## IV. DISCUSSION

The Service's determination that AWP's application was
statutorily incomplete is supported by the administrative record.
Under the APA's highly deferential standard, the Service's
decision that the ITP and HCP were incomplete was neither

arbitrary, capricious, nor an abuse of discretion. The Service's October 2022 letter (AR-000059-65) identified the factual deficiencies in Plaintiff's HCP and articulated a satisfactory explanation for deeming the application statutorily incomplete. First, AWP did not adequately deconstruct its anticipated activities and the HCP did not include sufficient project details at scales relevant to the impacted species. AR-000062-63. There is a rational connection between this finding and the Service's decision because the Service could not adequately assess the different impacts on the covered species without all the necessary facts from Plaintiff. Thus, the Service lawfully found that the first statutory requirement of a "complete description of the activity sought to be authorized," was not met. 50 C.F.R. § 17.22 (b)(1)(i).

Second, regarding the Service's finding that AWP did not account for the take that was "reasonably certain" to occur, the Court must be deferential to the Service's expertise in determining that AWP did not rely upon the best available science in its accounting of the potential take. See Nat'l Audubon Soc'y, 991 F.3d at 583. For example, the Service provided AWP several published studies prior to AWP's submission of its final Draft HCP, but Plaintiff declined to incorporate the best available science. This conclusion is again rationally connected to the Service's decision to not proceed with Plaintiff's application.

See AR-000063-64. Accordingly, the HCP did not provide "[t]he impact that will likely result from such taking." 50 C.F.R. § 17.22(b)(1)(iii)(A).

Furthermore, taking the record as a whole, Plaintiff's application did not proceed through the application process because <u>Plaintiff</u> decided to stop collaborating with the Service on the HCP and did not provide the information the Service required to assess the application. The record supports that the Service would have continued to provide feedback, but Plaintiff indicated it would not provide any more drafts. AR-000065; AR-000860-61; ECF No. 42, at 7. As the Service points out in in its reply briefing [ECF No. 49], AWP can fix the identified issues with the Draft HCP and resubmit its ITP application. ECF No. 49 at 2. Given the detailed feedback provided to AWP about the purported gaps in its Draft HCP, its request to have this Court declare its ITP application "complete" effectively asks this Court to substitute its judgment for FWS's expertise, which is inappropriate under the APA standard of review.  Moreover, it would only serve to advance the ITP application to the next step of the process where it would most likely be assailed for the reasons FWS has identified causing further delay and frustration.

Considering the record and the Court's limited role at this stage, the Court must uphold the Service's decision because it is well-reasoned based upon substantial evidence in the

administrative record. This Court cannot overturn the Service's final decision under the APA "even if it might have decided differently as an original matter." Sebelius, 172 F. Supp. 3d at 914. Thus, the Court declines to set aside the Service's final decision that AWP's application was statutorily incomplete.

## V.    CONCLUSION

For the reasons stated herein, Plaintiff's motion for summary judgment [ECF No. 41] is **DENIED** and Defendant's motion for summary judgment [ECF No. 45] is **GRANTED**. AWP's complaint [ECF No. 1] and amended complaints [ECF Nos. 16, 25] are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to enter judgment in favor of the Defendant, consistent with this Memorandum Opinion and Order, and to **STRIKE** this case from the Court's active docket.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

**DATED:**  February 12, 2024

_Tom S Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA